Alright, this court is now in session. Please be seated. The case number 315-0337, Leonard Zastek v. Grant Dixon v. James Hurley III, et al. May it please the court, Mr. Izzo, Justices, this case comes before you on a question on how much evidence is enough. How much is enough? On May 15, 2011, James Hurley III drove a car with the knowledge and permission of his parents and got in an accident with Len Basak, a respected Illinois attorney. At the trial court, granted summary judgment on negligent entrustment and agency, we believe a jury should be entitled to determine whether negligent entrustment and agency was present in this case. I know the court has read the briefs and I'll be very, if I could briefly review the facts, only for a moment. The relevant facts of this case actually start a few years before. Mr. Hurley III, who I'll refer to as James, the son who at the time of the appearance was an 18-year-old man living at home, had been caught underage drinking when he was 15. He had a stop sign violation running a stop sign that same year. He had been caught with possession of cannabis in a car, possession of drug equipment in a car, and had been in a rear-end accident the following year. All of these things preceded our accident and actually two accidents. I believe the facts demonstrate that there is at least a question of fact whether Mr. and Mrs. Hurley were guilty of negligently entrusting their car to their son at the time of the occurrence. The jury should be able to determine whether their judgment, the parents' judgment, was appropriate in this case. Most of the facts of the crashes, and I say plural, are undisputed. Mr. Bassett was driving when he was rear-ended by Mr. James Hurley III. They were on their way out of town with several friends to go to what I would call a senior trip. Mr. Hurley, the father, knew that his son was driving the vehicle and where he was going at the time. There is a rear-end crash that coincidentally was at the same intersection, almost the exact same location, where James had been involved in a crash the year earlier. Was he ticketed for that crash? He was not. How does that play into the facts? Well, I think you, Justice Wright, you bring up an excellent question. Because I think one of the questions I think the case law poses is, is a ticket required in order for somebody to be guilty of negligent entrustment? In other words, do you have to have tickets in order to be able to determine, oh, maybe I... And was he determined to be negligent in that case? No, but it was a rear-end collision, much like the same collision here. The reason why I don't believe tickets are necessary is because injecting tickets into the consideration... I'll agree with you. I'll concede that point. But there was no liability determination at all based on that accident? There was no prosecution of any claim against James for that crash. So why do we consider it? Because if we don't consider his prior driving record, or if we consider it only based on what convictions or liabilities have been assessed, we are injecting into this case prior determinations of other courts, other police officers, other people. There are lots of reasons why people don't get tickets for car accidents, lots of reasons why people don't pursue claims for car accidents. And so I don't believe it's appropriate at this juncture to make that determination. We know that that indicates that Mr. Hurley at least rear-ended somebody else, and it's part of the equation that should be factored in for a jury to determine if the parent's decision to allow James to drive was appropriate on the day of this crash. I think it's all part of the overall equation. So in terms of what tickets James did have before this particular accident, there was only one 18 months before the accident? There was a stop sign violation. That was a moving violation, as Mr. Izzo points out. That is the only moving violation. The possession of cannabis and the possession of drug equipment were also tickets that occurred while he was in a car, but they are not truly moving violations. Were there drugs or alcohol in the car at the time this occurred? They were not. They were not. None that we know of. I have no reason to believe so. Immediately after this crash, James calls his father and mother and they both come to the scene, which is a critical fact for later in the argument regarding agency. They decide, the three of them together decide that they're going to drive the car back to the family home. It has a damaged bumper. That damaged bumper is removed and put in the parent's car. And on the way home, the hood of James's vehicle flies up and there is a hard swerve. I made a mistake in my brief when I said there was contact between the two cars, between Mr. Basak and the other car. That was a mistake. There was no actual physical contact. There is a dispute in the facts about whether Mr. Basak was even in the area at the time, but resolving disputes in favor of the plaintiff here, as we must because of the summary judgment, Mr. Basak swings his car hard to the right to avoid the second impact. I think that one of the real questions that this court has to determine is ultimately on a summary judgment, is the trial court able to say without any reservation that no reasonable jury could ever determine that this was negligent entrustment based on the record? I think it's a dangerous consideration to start eliminating prior criminal activity, prior other acts, to say that that can't have any bearing or impact on somebody at the time that they are driving. Certainly that is a... That's been the view of the courts for a long time, though, hasn't it? That very point. Justice Carter, I will concede that the published cases talk about driving records, driving convictions, as Justice Wright pointed out. I think that's a narrow view, and I can certainly concoct scenarios in my mind, and I know the court can as well, where somebody without any prior traffic tickets could certainly be somebody who should not be behind the wheel. For example, some of the old, old cases talk about somebody without a driver's license, there has been some debate about whether they should be driving at all. Having a driver's license or not doesn't make you a good driver, but certainly somebody with no experience and no driving record, or no driver's license, shouldn't be behind the wheel. My 11-year-old son has no driver's license, no tickets, nothing, but if I put him behind the wheel of my car, that would certainly be negligent entrustment on my part. Because you're handing your car keys to somebody who is not licensed to drive. And in this case, the parents handed the car keys to somebody who not only was licensed to drive, but had recently completed a driver's safety course successfully. Absolutely true. I understand why you have to analogize that way, but it doesn't really fit the facts in this case. But I think what's critical in my analogy, Justice, is that it's not that my son does or does have a license, that doesn't make him a good driver. What is wrong is that he doesn't have the judgment necessary to operate a car safely. And I think if you take the case law in Illinois and across the country at its whole, that's really the critical question. Does that person possess the judgment to be able to do it? But the reason I ask my question is, you're really asking for a person to change the law in this area, aren't you? I don't believe so, candidly. I believe that all I'm asking the court to do is allow a jury to consider whether the prior bad acts of a driver are enough to give his parents, when they hand him the keys, pause to think, maybe this person shouldn't be driving. It's the judgment of somebody that is in question here. And that judgment may be reflected in prior driving records. But this is not like a dog bite where, well, my dog never bit anybody, so I'm okay. That's not what this is about. This is somebody who has displayed a very long history, as far as we can tell, of poor judgment. And that poor judgment should give parents anywhere pause about handing their keys to their son to go out and drive. Particularly in the facts of this case, where they know he's going off out of town with a carload of kids. Goes to the same intersection and has another collision. It's the judgment that we are asking the court to consider. The judgment of those parents. And yes, while there may only be a stop sign violation in his driving record, that's not the only consideration here. And there are lots of scenarios where somebody shouldn't be behind the wheel, even if they don't have any traffic tickets in the past. And that's what I think is important to consider here. There is some discussion... Who is allowed to drive in Illinois? The Secretary of State, Mr. White, decides who is allowed to have a driver's license. And I would be the first to say having a license doesn't make you qualified to drive. Our concern here... The license is granted by the Secretary of State. The law says in negligent entrustment that somebody who has a superior right of control, such as in this case, has an extra step that they have to do. And they have to consider whether, even though he's a valid license, is he somebody that should be driving. Because that is a trust. They are trusting a dangerous instrumentality to the hands of their son. And they have an extra level of responsibility. Because without their permission, this accident never happens. Because what you're asking us to do is, because of a prior incident, ticketed or not ticketed, any parent who allows a child with a driver's license to drive, and then there's an accident, the parent is also subject to being sued, correct? In every case. I don't believe that that's the case. I can't control what every plaintiff's lawyer in the country does, but I can tell you that there has to be a good faith basis for filing the complaint. If, like here, we have five prior occurrences, one of them traffic, four of them criminal, yes, I believe that the parent should be given... And some of the prior occurrences you're talking about aren't dealing with driving at all. No, two of them absolutely have nothing to do with driving. But they do display a poor lack of judgment. And that's what's the concern here, is that this young boy, this 18-year-old man at the time of the crash, was displaying a consistent and persistent lack of judgment. And it wasn't just one time, and that's not what we're asking about here, though I think the case law says that it can be that case. We're talking about a persistent lack of judgment. And that persistent lack of judgment was known, and the parents had the ability to stop this accident from happening. Whether a jury decides whether they should have in this case or not, that's not the question here today. We're just asking the jury should be able to determine, based on the totality of the circumstances, should the parents have been given pause and not given him the keys that day to a carload of kids going off on what I call a senior trip. I would concede that the control of the mother is not nearly as strong as that of the father. However, she is a custodial parent. James still lived at home at the time of the occurrence. And as all parents know, mom and dad are, as long as you're living under their roof, it's their rules. But certainly the control aspect, from a legal perspective, is much less strong against the mother than it is of the father. The father has title. I will say that as far as the control goes, that control is demonstrated at the scene after the first crash. Because at that time, both mom and dad arrive at the scene and mom and dad are doing the questioning. I think the deposition testimony bears that out. It shows that mom has that control at the scene. And importantly, for the second crash, because you have two licensed drivers and adults at the scene, they didn't have to put their son into the driver's seat of the same car and have him drive again. I think that shows further evidence of negligent entrustment. Now we have the backdrop of the five violations that I've talked about. Now we have a crash that's just moments ago, and the parents choose to put him in the car again. And I think that's further evidence of negligent entrustment. That in and of itself demonstrates the control of both parents, but also the lack of judgment that the parents had prior to the second incident. If we accept your theory, this theory is not related to the parent-child relationship, correct? It is not. So why wouldn't the theory expand then to FedEx drivers operating vehicles for that corporation or other corporations? Isn't this the beginning of the slippery slope? No, I really don't believe that it is, because in the example of a FedEx driver, the FedEx driver, if he has a poor driving record, the rules of respondeat superior would apply, and the owner of that vehicle is responsible under respondeat superior. And there's case law that talks about the fact that there... What if the FedEx driver has the exact same record as this AP? If the FedEx driver has the exact same driving records as James did, there won't be negligent entrustment because of the respondeat superior allegations that would be in the complaint. But yes, I think they could be responsible, because FedEx knows that this individual has exercised very poor judgment over the course of time. And because of that, they should be responsible for his conduct. I think it would be a respondeat superior case, but I think that that is an appropriate consideration. Thank you. If you're not in a vehicle and you just allow your teenager to go to the park and the teenager gets in a fight at the park and he's had prior fights, would that be cause of action too? I don't believe so, because I don't believe that... You allow them to go to the park. I really don't see that as being a slippery slope. Now, if you told me that he went to the park with a weapon and was using his judgment to use that weapon inappropriately, yes, it's the judgment that's a consideration here. And I think the evidence of James's judgment is replete. So if the person had a hunting shotgun and took it and was showing his friends and there had been one prior accident with a shotgun and something happened, then the parent would be responsible. Could it be an issue of fact? I think it could be, and there's actually a published case on that, a very similar set of facts, because somebody allowed a young man, a 10-year-old I think it was at the time, to have a gun. There was some dispute factually, but ultimately there was upheld a cause of action for negligent entrustment allowing that young child to have the gun, ultimately shot a young individual and killed him. That was a published case and that did allow... What state is that in? It was Illinois. And I can... When I step up again I can give you the name of the case because I know I have it. I just of course can't put my finger on it this second. But I have the case citation here in my notes and I will find it.  Well, there is, as I stated, there was not contact, but the plaintiff made a hard turn to avoid the flying hood of the car. The car made an evasive action. I think it just flies up. James takes an evasive action to try and curb the vehicle to avoid causing... Mental anguish that he pressed down so hard he was mentally traumatized by that incident. That is an allegation in the complaint. There was also physical injuries that occurred as a result and those allegations are also contained in there. Physical injuries that occurred that were unique to the second collision or that occurred in the first? I think that it's very... I think that the second incident will be the subject of some discussion with the medical testimony and Mr. Izzo has explored that in great detail with the doctors. That there is evidence that there was a second injury as a result of the second incident, but that will be something that will have to be fleshed out. So there was no shoulder injury in the first collision? No, there were no shoulder injuries, but that has been the subject of vigorous debate with the medical community. I know that I'm out of time. If I may just summarize very briefly, I believe that the judgment of James in this case is what's really at question and the judgment has been displayed to be very poor and his parents should have been given pause before they entrusted their vehicle to him. Thank you, Your Honor. I was going to argue last a point, but I think I should address it first. The point I want to make to this Court is how the appellant is really playing fast and loose with the facts of this case. In the opening paragraph they basically state that there were two crashes. We know there were not two crashes. There was only one. Counsel also plays fast and loose with this issue regarding the permission from Mr. Hurley to his son about taking this car either before the accident or after the accident. There was no permission given. There's no facts in this case saying permission was ever given by Mr. Hurley to take this car to go to Grand Barrel Lodge. He just knew his son was going there. No permission about that car being given to him. Secondly, there was no permission given by Mr. Hurley to take the car after the second accident. This stuff about they got together and talked about who was going to take the car just is not in the record. And I have difficulty sometimes conceptualizing how you can play so fast and loose with the facts of this case to get to the point you want to make to this particular Court. There was no second crash. And that's really a big issue in this case. There's no crash. There's no proximate cause. Where is the proximate cause in this second incident? There is none. The restatement of torts regarding Section 308 of the Second Restatement of Torts talks about negligent entrustment. And negligent entrustment basically means you give that instrumentally to the person. It has to be under your control. And then that negligent entrustment has to proximately cause the injuries that were sustained by the appellant in this case. What we have here is we have a case where Mr. Hurley allowed his son to go to Grand Barrel Lodge. He got involved in an accident. But you know how that accident happened? Something that the appellant's attorney never mentions? He's driving along northbound on LaGrange Road and next thing you know a car swerves and there's Mr. Basak's vehicle. And he gets into an accident. He slips on the road and he gets into the accident. That was the proximate cause of any injuries Mr. Basak may have sustained as a result of that first accident. The proximate cause wasn't any negligent entrustment by Mr. or Mrs. Hurley. Now going back to the question that Justice Carter I believe raised regarding Vivian Hurley, I think that's an easy answer here. Vivian wasn't the owner of the car. Since Vivian wasn't the owner of the vehicle, there is no negligent entrustment. Zero zip in this particular instance. And as far as the second incident is concerned, once again, Mrs. Hurley wasn't the owner of that vehicle. So somehow surmise that because there may have been a discussion about who should take the car home, that now she's exercised control of the vehicle. There's no case law to support that. And if you look at counsel's briefs or appellant's briefs, there is no case law listed in those briefs supporting that particular position. So as far as Vivian is concerned, I think it's quite obvious that she should be dismissed from this case because there's no genuine issue of material fact that she was negligent entrusted the vehicle to her son. And I find it kind of ironic too in this particular case. Counsel keeps talking about poor judgment over and over and over again. Listen, poor judgment can't dictate whether or not somebody is going to take a vehicle and get into an accident at any one time. It can't dictate whether or not somebody is going to get into an accident on any particular day. Justice Wright, you correctly pointed out that there was only one moving violation some 18 months before this accident. And counsel keeps pointing out about this drug paraphernalia. Followed by traffic safety school. Thank you very much. Counsel also points out that there was also drug paraphernalia. But that drug paraphernalia was found in his car that day. We're not going to dispute that at this point in time. But that was on the same incident as well. Then counsel wants to point out in his briefs that supposedly we can tell how bad a driver Mr. Hurley is going to be because you know one time he didn't wear a seatbelt and he got a ticket. That has nothing to do with how he drives that day as well. And last but not least, counsel again has played very fast and loose with the facts of this case regarding that second accident. You have the record before you. You will be able to review that record. That record shows that he was in a gas station at the time of the accident and he was struck by another vehicle. He didn't rear end anybody else. He was involved in the accident because somebody hit him. How does somebody else hitting Mr. Hurley indicate that he's going to be a bad driver on May 15th that day? It doesn't. Now, I thought what was kind of interesting, both of us kind of argued the IRA case in some respects. And that's the 327 ILAB 31095. The interesting thing about the IRA case is even though the seller of the motorcycle in that particular case didn't particularly know whether or not the driver may have had two traffic tickets before the time he sold the vehicle, the court said even if he did know, even if the seller had known that he had a moving violation and he had a ticket for not tinting his windows, that still wouldn't have been a violation. That still wouldn't have been enough because those incidences didn't involve crashes. Just like the Hurley case here. That ticket he got for a moving violation for the stop sign didn't involve an accident. The fact he didn't have a seat belt on didn't involve an accident. So I think IRA is somewhat instructive as far as the position taken by the Hurleys in this case that there was no negligent entrustment of any vehicle. After the accident we all know that there was an investigation conducted at the scene and at some point in time it was decided that Jim Hurley Jr. himself would jump into that car and drive the vehicle home. Mr. Hurley testified that he never gave him permission. Never told him that. Mrs. Hurley never gave him permission. I think Mrs. Hurley even testified, I don't know, it wasn't my car, my husband owned it, Jim was driving it. And I think what this court has to recognize in some respects is the uncontested facts where everybody said this was Jim's car. We know how it all goes sometimes. You buy a car, you give it to your kid, you still own it because you still own it, and he does whatever he wants with the car. He drives it here, he drives it there, he goes to school, he goes out to prom parties, he does all those kind of things. They testified that Jim did the repairs on the car. They testified Jim paid for the gas in the car. The bottom line, it was Jim's car. So even though Mr. Hurley was the owner of the vehicle, he didn't exert any type of superior right of control over that vehicle. I think the evidence shows and the fact shows there really is no genuine issue material fact regarding negligent entrustment in this case. None whatsoever. There are arguments might read regarding negligent supervision as well, which I think kind of go hand in hand with negligent entrustment. Those issues were never addressed by the appellant in any reply brief. Finally, when it comes to this second incident, it's surprising the lack of argument from the appellant when it comes to whether or not there was actually contact between these vehicles. And even Judge Jars pointed out during his oral argument, he had significant concerns about the fact there was no contact. And if you read through Mr. Bassett's deposition transcript, Mr. Bassett specifically testified he didn't know he was injured after that first accident. He testified, if I remember correctly, that he was shook up after that accident. So how can a second incident where he stopped his vehicle suddenly all of a sudden cause another injury to his vehicle? That may have not been caused in the first accident. While counsel was correct, there's a lot of dispute about that. The fact there was no second contact between the vehicles I think is extremely significant in this case. So thank you very much for your time, unless you have some questions for me. Thank you. Thank you, Mr. Rizzo. Mr. Dixon. Thank you, Justice Carter. I did find a case, it's Laddy v. Scholl-Jordan. The citation is 237, 11-3-528. And in that case, I think that case is instructive for what we've talked about here because it's a gentleman who owns a firearm entrusted to a young boy who was clearly very experienced with operating firearms, even though he was young. He knew how to use a gun, and yet that afternoon, later that day, after they had been hunting, that boy was playing what I would call cops and robbers and thought the gun was unloaded when in fact it was loaded, he shot his friend. Importantly, that boy had never been ticketed for using a firearm improperly. In fact, it was just the opposite. The case law demonstrates that he was very experienced, and yet this court, the third district, held that negligent entrustment by the owner was present. So an experienced young boy, it demonstrates the poor judgment of the owner, and that's why that Laddy case is so significant. And was he 10 years old? He was 10 years old. And this was a family that had grown up hunting, and this is a place that they had a facility where they allowed people with drug and alcohol problems to recover, but they also had some hunting that went on there. I think that case is significantly instructive. The Ira case, as counsel mentioned, I think is a significant case. And actually, Justice Leighton, you wrote a dissent in that case that I think is instructive for us here today. Because even though the rule in that case came down that there wasn't enough because of the unlicensed status, in your dissent you said it's not just about the unlicensed status. That gentleman in that case was not only unlicensed but inexperienced, and you would have come to the opposite conclusion of IRAC. And counsel omits that fact, but that's the reality. And I think you got it right there, and unfortunately you didn't have the votes, but that was the reality in that case. And I think that's what this case is really about. Last but not least, the poor judgment I think is the hallmark of negligent entrustment cases in Illinois now. In Garland, that case where the plane crashed, and I cite that in my brief, is instructive as well. Because there was no ticket issued to anybody, the pilot. In fact, the facts were just the opposite. The pilot in that case was very well experienced. He was licensed by the FAA. Yet the owner had some what I would call queasy feeling about the pilot's ability. Obviously it wasn't too significant because the owner got on the plane, and then the pilot operating the plane in bad weather crashes the plane and kills the owner and everybody on board. In that case, there was no prior tickets. There was no prior problems, no direct evidence that this person had an individual problem with operating a plane. It was just an uneasy feeling. That was enough for negligent entrustment. I think that speaks to the standard here. The judgment here is dangerous. To say that if you don't have moving violations, and that's the rule in Illinois, is the slippery slope here. It's not just moving violations, it's not just tickets. Rather, it is a display of poor judgment. And I think IRIC and the dissent of Justice Leighton points that out. I think Latty points that out, and I think most recently Garland points that out. And that's the rule we're asking for. Will the jury ultimately find that? That's a 10 or 11-year-old child who's allowed to keep the gun, or is using the gun in the house when there's the incident. Correct. But clearly an experienced individual operating gun had been hunting earlier that day, so he not only knew how to fire a firearm, he obviously was at least a reasonable shot so he could go out there. So this was somebody who had experience, and the record is completely devoid of any indication that this young man had any problems operating a gun. And in fact, the record is the opposite. He thought the gun was unloaded at the time of the occurrence. Unfortunately, he was wrong, and that's still negligent entrustment according to the 3rd District. If the court doesn't have any other questions, I thank you for the opportunity. Thank you, Mr. Dixon. Thank you both for your arguments today. We will take this matter under advisement and provide you with a written disposition. We now have a short recess for panel. All rise.